<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

November 28, 2022

David BenHaim, Esq.
Phillip Manela, Esq.
Lipsius-BenHaim Law, LLP
80-02 Kew Gardens Road
Suite 1030
Kew Gardens, NY 11415
*Counsel for Plaintiff*

Robert James Mancuso, Esq.
Faegre Drinker Biddle & Reath, LLP
One Logan Square
Suite 2000
Philadelphia, PA 19103
*Counsel for Defendant*

**LETTER OPINION FILED WITH THE CLERK OF THE COURT**

  **Re:**    ***Samuel Spalter v. Protective Life Ins. Co.*, Civ. No. 21-08843 (SDW) (MAH)**

Counsel:

  Before this Court are cross Motions for Summary Judgment brought by Samuel Spalter ("Plaintiff") and Protective Life Insurance Company ("Defendant") pursuant to Federal Rule of Civil Procedure ("Rule") 56. (D.E. 17, 18.) Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated herein, Defendant's motion is **GRANTED** and Plaintiff's Motion is **DENIED**.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

This matter arises from a disagreement concerning cancellation of Plaintiff's life insurance policy.  Plaintiff is a citizen of either New Jersey or Florida, and Defendant is a Tennessee corporation, with its principal place of business in Alabama.  (D.E. 1 ¶ 4.)[1]  On August 11, 2007, Defendant issued an insurance policy (the "Policy") on the life of Plaintiff.  (D.E. 17-6 ¶ 1; D.E. 18-4 ¶ 1; D.E. 23 ¶ 1.)  The Policy had an "Initial Face Amount of [$3,000,000]," an "issue [a]ge of 76", a $150,000 annual planned premium, and a "Surrender Charge for certain [c]ertificate years."[2]  (D.E. 18-4 ¶ 2; *see also* D.E. 17-6 ¶ 2.)  The Policy certificate provided a 61-day grace period during which "the insurance provided by this Certificate remains in effect . . . ," provided that the insured would be notified "in writing that a premium grace period has begun," and cautioned that if the insured did not submit "sufficient premium to keep the [c]ertificate in force before the end of the premium grace period, the [c]ertificate will terminate without value as of that date."  (D.E. 18-4 ¶ 9; *see also* D.E. 17-6 ¶ 6.)  The Policy also had a Lapse Protection Endorsement, which provided that "[i]f the Lapse Protection Account Value equals or exceeds Certificate Debt then the Certificate is guaranteed not to lapse."  (D.E. 18-4 ¶ 13; *see also* D.E. 17-6 ¶ 5.)  Plaintiff was provided an annual report that reflected "[t]ransaction [d]etails of the [c]ertificate for the applicable year, a [c]ontinuation of [i]nsurance section, and the status of the Lapse Protection."  (D.E. 18-4 ¶ 14.)

Beginning in November 2007, the Policy's "Lapse Protection fluctuated between being active and inactive."  (*Id.* ¶ 16.)  In September 2009, Defendant sent Plaintiff the first of 52 grace notices issued due to insufficient payment of premiums or retention of cash value greater than zero.  (D.E. 18-4 ¶¶ 17–18.)  Additionally, an annual report Defendant sent to Plaintiff on October 17, 2012 "advised Plaintiff that Lapse Protection was not active."  (D.E. 18-4 ¶ 15.)  Specifically, the 2012 annual report contained a section titled "LAPSE PROTECTION DETAILS," which provided:  "The lapse protection provided under your policy has terminated.  If you wish to pay the premium necessary to restore the lapse protection, please call us for information concerning the amount of premium required."  (D.E. 18-3 at 101.)  Subsequent annual reports contained the same message indicating that the lapse protection was no longer in effect.  (*See id.* at 102–07.)

Defendant mailed Plaintiff a final grace notice on February 8, 2016, which stated that Plaintiff had not paid sufficient premiums to either meet the requirements of the lapse protection or keep the cash value above zero.  D.E. 18-4 ¶¶ 19–20; *see also* D.E. 17-6 ¶¶ 7–8.)  The notice urged Plaintiff to "act immediately to safeguard the coverage provided by your policy," and cautioned that "WITHOUT PAYMENT OF ADDITIONAL PREMIUM BY March 12, 2016, ALL COVERAGE UNDER YOUR POLICY WILL CEASE."  (D.E. 18-4 ¶ 20; *see also* D.E. 17-6 ¶ 8.)  The notice also provided that "[t]he requirements for reinstatement are listed in the

---

[1] Citations to "D.E." refer to the docket entries for the parties' motion papers, including briefs, affidavits, declarations, and statements of undisputed facts, and the documents attached to and referenced therein.

[2] Plaintiff's age was submitted incorrectly and later corrected to reflect an issue age of 73, and the Policy was reissued with the same effective date, a slightly lower premium, and a different Surrender Charge.  (D.E. 18-4.)

Reinstatement provision of your policy,"[3] and listed the contact information for a customer service agent.  (D.E. 18-4 ¶ 20.)

Plaintiff contacted Defendant to make a premium payment and was informed that he would need to submit a minimum premium payment of $16,034.14 by March 12, 2016 "to take the [c]ertificate out of th[e] grace period."  (D.E. 18-4 ¶ 22.; *see also* D.E. 17-6 ¶¶ 10–11.)  On March 10, 2016, Defendant received a premium payment of $15,425.00 from Plaintiff—a remittance $609.14 less than the minimum payment due.  (D.E. 18-4 ¶ 23; D.E. 17-6 ¶¶ 12–13.)  Plaintiff did not send additional funds to Defendant after that payment was made.  (D.E. 18-4 ¶ 24.)  On March 21, 2016, Defendant sent a written notification to Plaintiff confirming that because Plaintiff failed to make a payment sufficient to meet the minimum required payment, the Policy lapsed on March 13, 2016, and Plaintiff no longer had coverage or benefits.  (*Id.* ¶ 25.)  Plaintiff did not submit a reinstatement application within the five-year permissible timeframe.  (*Id.* ¶ 28.)

Plaintiff filed the instant lawsuit on or about March 4, 2021 in the Bergen County Superior Court, Law Division (the "State Court Action"), alleging that Defendant unlawfully cancelled the Policy and requesting "that the Court enter judgment against Defendant declaring that the Policy is in full force and effect, award[] Plaintiff costs of the suit and attorneys' fees," and grant any "other relief this Court may deem just and proper."  (D.E. 1-1 at 2–6.)  Defendant removed the matter to this Court on April 9, 2021.  (*See* D.E. 1.)  Following discovery, pursuant to a scheduling order, (D.E. 13), the parties filed respective cross-Motions for Summary Judgment.  (D.E. 17, 18.)  The parties each submitted a Statement of Material Facts ("SMF") in support of their respective motions, (D.E. 17-6, 18-4), and Defendant filed a Response in Opposition to Plaintiff's SMF.  (D.E. 23.)

## II.    LEGAL STANDARD

### A.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law."  *Id.* at 248.  A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  The dispute is not genuine if it merely involves "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its

---

[3] The Reinstatement provision provides that Plaintiff may apply for reinstatement "within five years of the end of the grace period during the life of the [i]nsured," provided evidence of insurability, payment of the total amount due plus interest, and payment to reinstate the certificate.  (D.E. 18-4 ¶ 26.)

burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  Once the moving party meets its initial burden, the burden then shifts to the nonmovant who must "set forth specific facts showing the existence of . . . an issue for trial."  *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001) (citing FED. R. CIV. P. 56(e)).  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his [or her] favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue."  *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.S. at 325).  Further, the nonmoving party is required to "point to concrete evidence in the record [that] supports each essential element of its case."  *Black Car Assistance Corp. v. New Jersey*, 351 F. Supp. 2d 284, 286 (D.N.J. 2004) (citing *Celotex Corp.*, 477 U.S. at 322–23)).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which . . . [it has] the burden of proof[,]" then the moving party is entitled to judgment as a matter of law.  *Celotex Corp.*, 477 U.S. at 322–23.  Furthermore, in deciding the merits of a party's motion for summary judgment, the court's role is not "to weigh the evidence and determine the truth of the matter[,] but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.  The nonmoving party cannot defeat summary judgment simply by asserting that certain evidence submitted by the moving party is not credible.  *S.E.C. v. Antar*, 44 F. App'x 548, 554 (3d Cir. 2002) (citing *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998)).

## III.   DISCUSSION

Plaintiff seeks a declaration that the "Policy is in full force and effect."  (D.E. 1 ¶ 33.)  For this Court to find in favor of Plaintiff's claim and provide such a declaration, it would have to affirm that Plaintiff fulfilled the requirements as set forth in the Policy.  When viewing the facts in a light favorable to Plaintiff, however, it is evident that he did not meet the requirements plainly set forth in the Policy, despite Defendant affording him abundant notices and ample opportunities to do so.

"An insurance policy generally should be construed according to its plain and ordinary language."  *Boylan v. Jackson Nat'l Life Ins. Co., Inc.*, 353 Fed.App'x 708, 711 (3d Cir. 2009) (citations omitted).  The material facts of this matter are not in question and neither party disputes the meaning of the language in the Policy.  Plaintiff often paid premiums on the Policy late—so often, in fact, that the Policy entered grace periods 52 times.  (D.E. 18-4 ¶¶ 17–18.)  The Policy had lapse protection that ended in 2012 and Plaintiff was informed of such via notices on Annual Reports Defendant provided to Plaintiff.  (D.E. 18-3 at 101–07.)  After Defendant notified Plaintiff that the Policy had entered a grace period due to non-payment—for the 52nd time, Defendant informed Plaintiff that he would need to send a payment of $16,034.14.  (D.E. 18-4 ¶ 22.; *see also* D.E. 17-6 ¶¶ 10–11.)  For an inexplicable reason, Plaintiff, instead, sent a payment of $15,425.00 two days prior to the final due date—a remittance that was $609.14 short of the required minimum payment.  (D.E. 18-4 ¶ 22.; *see also* D.E. 17-6 ¶¶ 10–11.)

Plaintiff primarily argues that there was a lack of notice concerning the funds required to keep the lapse protection in place.[4]  (D.E. 17-7 at 6–10.)  The argument is unavailing.  Defendant provided Plaintiff ample notice regarding the requirements of the lapse protection, and notified Plaintiff when the lapse protection was no longer in effect due to Plaintiff's failure to meet the requirements of the Lapse Protection Endorsement.  (D.E. 18-1 at 7–11.)  More importantly, this Court is perplexed as to how Plaintiff can plausibly assert a failure of notice concerning the amount due to keep the Policy in effect when Plaintiff readily admits he inquired about the amount due, and Defendant told him that the amount due was $16,034.14.  (D.E. 18-4 ¶ 22.; *see also* D.E. 17-6 ¶¶ 10–11.)  Plaintiff had more than adequate notice:  he had direct knowledge.  Whether Plaintiff disagreed with the amount due or not, he painted himself into a corner by waiting until two days before the Policy was set to lapse to send payment.  Further, rather than calling and requesting a satisfactory explanation for the amount due, Plaintiff remitted an insufficient payment.  Moreover, even though there was a five-year window to effect reinstatement, Plaintiff failed to pursue reinstatement.

This Court finds that Defendant has established that it provided Plaintiff with fully adequate notice of the termination of lapse coverage, notice of the amount Plaintiff needed to provide to bring his payment current and continue the Policy, and an opportunity to reinstate the Policy at any point within a five-year window following the end of the grace period.  Defendant fulfilled its end of the bargain, as provided by the Policy terms, and Plaintiff was the sole author of the demise of the Policy.  Because there is no genuine issue of material fact, and because Defendant complied with the terms set forth in the Policy, Plaintiff's claim will therefore be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. Plaintiff's Motion for Summary Judgment is **DENIED** as moot**.**  An appropriate order follows.

/s/ Susan D. Wigenton
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:  Clerk
cc:    Parties
       Michael A. Hammer, U.S.M.J.

---

[4] Plaintiff sets forth an additional argument disputing Defendant's calculation of the amount needed to take the certificate out of grace status, but grounds the argument on Defendant committing this alleged miscalculation in August 2009, (D.E. 17-7 at 7–10), which means that the statute of limitations of six years would bar this claim.  *See 21st Century Mortgage Corp. v. Chicago Title Ins. Co.*, No. 17-03456, 2018 WL 6716081 at *4 (D.N.J. Dec. 21, 2018) ("[I]n the absence of a provision 'in the insurance policy or an express statute to the contrary, the statute of limitations applicable to a suit on a policy of insurance' as mandated by N.J.S.A. 2A:14-1 is six years." (quoting *Crest-Foam Corp. v. Aetna Ins. Co.*, 727 A.2d 1030, 1034 (N.J. Super. Ct. App. Div. 1999))).